UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATHERINE G.,

                                                 Plaintiff,

   v.                                                   1:22-CV-1309 (FJS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                               Defendant.
_____

DANIEL A. OSBORN, ESQ., for Plaintiff
HEETANO SHAMSOONDAR, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her application for benefits. Plaintiff did not consent to the jurisdiction of a Magistrate Judge (Dkt. No. 5), and this matter was therefore referred to me for Report and Recommendation by Senior United States District Court Judge Frederick J. Scullin, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Both parties filed briefs, which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On November 25, 2020, plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning May 16, 2019. (Administrative Transcript ("T") 77, 91). Plaintiff's application was denied initially on May 19, 2021

(T. 114-126), and upon reconsideration on September 3, 2021 (T. 130-140). On January 10, 2022, Administrative Law Judge ("ALJ") Sharda Singh conducted a hearing during which plaintiff and vocational expert ("VE") Andrew Vaughn testified. (T. 51-76). On February 14, 2022, the ALJ issued an order denying plaintiff's claim. (T. 11-22). This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on October 6, 2022. (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . .  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include

3

that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III.  FACTS

Plaintiff was thirty-seven years old on the alleged disability onset date.  (T. 20). She had at least a high school education (T. 20) and lived in an apartment (T. 69). Plaintiff had a vehicle and was able to drive approximately three hours before stopping. (T. 69).  Plaintiff worked as a state trooper before she suffered a work-related injury on August 25, 2018.  (T. 287).

Plaintiff, who is right-handed, claims "she sustained injur[ies] to her bilateral wrist, bilateral hand and thumb."  (T. 15, 720).  Plaintiff testified that she had issues "pinching, grasping, typing, writing, pushing and pulling."  (T. 56).  She also testified that she had difficulty with "simple tasks like buttoning [her] jeans."  (T. 57).  Plaintiff testified that her "left hand is worse" and she had issues typing, writing, and grasping

with her left hand as well. (T. 57-58). She testified that she wore a thumb splint on her right thumb (T. 57) and was currently waiting to have the de quervain's release surgery on her right hand (T. 56).

Plaintiff was also diagnosed with bursitis of the left scapula, right scapula, and neck. (T. 58). She testified that this caused her pain when she lifted her hands up or down. (T. 58). Plaintiff also stated that looking up and down aggravated her daily neck pain. (T. 60). She further testified that she received pain injections and purchased an upper body brace for this condition. (T. 58). Plaintiff used the brace to help with her cervical and thoracic spine issues. (T. 61). She alleges that her back issues stemmed from wearing a uniform made for the opposite sex during her time as a state trooper. (T. 61-63).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 14-20). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   THE ALJ'S DECISION

The ALJ first determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 16, 2019. (T. 14). Next, the ALJ found that plaintiff has the following severe impairments: cervical spine degenerative disc disease, de quervain tenosynovitis, bilateral wrist triangular fibrocartilage complex (TFCC) tear, right wrist sprain/strain, and asthma. (*Id.*). At the third step, the ALJ determined that plaintiff's impairments did not meet or

medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 16).

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except she: can perform frequent gripping; can perform frequent fine and gross hand manipulation bilaterally; cannot perform overhead reaching with the upper extremities; can perform frequent neck rotation and flexion; should avoid respiratory irritants; and cannot work at unprotected heights or with moving machinery.

(T. 15).

In making the RFC determination, the ALJ stated that she considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]"  (T. 15).  The ALJ further noted that she fully considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 404.1520(c).  (*Id.*).  After considering plaintiff's statements regarding her symptoms, along with the other evidence of record, the ALJ concluded that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (*Id.*).  The ALJ then determined that plaintiff was unable to perform any past relevant work.  (T. 20).  However, the ALJ did determine that there were other jobs that exist in significant numbers in the national economy that plaintiff could perform.  (T. 21).  Accordingly, the ALJ ruled that plaintiff was not disabled since the date the application was filed.  (T. 22)

## V. ISSUES IN CONTENTION

Plaintiff raises two arguments:

1. The ALJ erred by failing to adequately consider the medical opinion of Dr. Gabriel Dassa. (Plaintiff's Brief ("Pl.'s Br.") at 13-15 (Dkt. No. 7).

2. The ALJ's RFC is not supported by substantial evidence, particularly with respect to the lifting requirements of light work. (Pl.'s Br. at 15-17).

Defendant contends that the Commissioner's determination should be affirmed because the ALJ properly considered Dr. Dassa's opinion and the ALJ's RFC was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 5-9) (Dkt. No. 10). For the reasons stated below, this court agrees with the defendant and finds the ALJ's decision was supported by substantial evidence.

## DISCUSSION

## VI. RFC/EVALUATING MEDICAL EVIDENCE/EVALUATING SUBJECTIVE SYMPTOMS

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v.*

7

*Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2. Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the

Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with

respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3. Evaluation of Subjective Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling ("SSR") 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1020935, 81 Fed. Reg. 14166-01 at 14169-70, (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of the term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR

10

16-3p, 81 Fed. Reg. at 14167.  Instead, symptom evaluation tracks the language of the regulations.[1]  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the plaintiff's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the plaintiff's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49)) (alterations in original).[2]

If the objective medical evidence does not substantiate the plaintiff's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013).  The ALJ must assess the plaintiff's subjective complaints by considering the record in light of the following symptom-related factors: (1) plaintiff's daily activities; (2) location, duration, frequency, and intensity of plaintiff's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve

---

[1] The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the plaintiff's symptoms is not "an evaluation of the claimant's character." 81 Fed. Reg. at 14167.  The court will remain consistent with the terms as used by the Commissioner.

[2] The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

11

symptoms; (6) any measures taken by the plaintiff to relieve symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

    **B.**    **Analysis**

Plaintiff first argues the ALJ failed to properly consider Dr. Gabriel Dassa's opinion.  (Pl.'s Br. at 13-15).  On August 28, 2021, Dr. Dassa completed a physical capabilities evaluation relative to plaintiff's upper extremities.  (T. 723).  The ALJ noted

> Dr. Dassa reported the [plaintiff] had injuries of both upper extremities and opined a considerable degree of functional restriction.  For instance, he assessed the [plaintiff] could only occasionally lift and carry up to 5 pounds, occasionally reach in multiple directions, and occasionally perform simple grasping, fine manipulation, handling clerical objects near the body, and climbing stairs.  Dr. Dassa added the [plaintiff] could never push/pull or perform forearm motions, wrist motion, firm grasping, fingering/keying, crawling, climbing ladders, or work around vibrations.

(T. 19).

The ALJ found that Dr. Dassa's opinion was not persuasive.  (T. 19-20).  With respect to supportability, the ALJ noted that Dr. Dassa's treatment records did not "adequately support[]" the "rather extreme degree of exertional and non-exertional restriction[s.]"  (T. 19).  This shows the ALJ considered Dr. Dassa's treatment records but did not find that they supported the doctor's opinion.  With respect to consistency, the ALJ concluded that Dr. Dassa's opinion was not consistent with consultative

examiner Dr. Puri's opinion[3] and Dr. Dassa's own treatment records. (T. 19). The ALJ specifically noted that Dr. Dassa's

> treatment records typically show[ed] some notable positive hand examination findings, but also fairly intact physiologic functions. For instance, in July 2021, around the time of his questionnaire, Dr. Dassa noted positive right Finklestein sign and some swelling, tenderness, and decreased range of motion of the hands, but also full pronation and supination of the bilateral wrists, no clinical instability with stress test to the right collateral ligament, intact ability to make a full fist, and intact sensation and motor function[.]

(T. 20). The ALJ also initially referred to Dr. Dassa as an orthopedic surgeon, indicating the ALJ considered his specialization. (T. 16). Additionally, the ALJ cited extensively to Dr. Dassa's treatment records throughout the decision, showing she was aware of the lengthy treatment relationship between Dr. Dassa and plaintiff. (T. 16-20). Thus, the court concludes that the ALJ fulfilled the obligation, set forth in SSA regulations, that Dr. Dassa's opinion be evaluated in terms of the factors identified in 20 C.F.R. § 404.1520c(c).

Plaintiff also argues the ALJ's RFC is not supported by substantial evidence because the administrative record "is devoid of any valid evidence (yet [sic] alone substantial evidence) indicating that [plaintiff] can perform the exertional requirements of work at the light exertional level." (Pl.'s Br. at 16). Plaintiff takes specific issue with the lifting requirement. (*Id.*). Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.

---

[3] Consulting neurologist, Dr. Puri, examined plaintiff and found that she had no objective limitations to fine motor/gross motor activities, no objective limitations to her gait, mild limitations on activities of daily living, mild limitations on overhead reaching and to gripping, and moderate limitations as to lifting weights. (T. 589).

*Harold W.J. v. Comm'r of Soc. Sec.*, No. 6:18-CV-146 (ATB), 2019 WL 1410350, at *6 (N.D.N.Y. Mar. 27, 2019).

The ALJ noted plaintiff claims "she can essentially lift no weight with the left arm and only 5 to 6 pounds with the right arm." (T. 15). The ALJ also noted Dr. Dassa opined plaintiff "could only occasionally lift and carry up to 5 pounds," but that "Dr. Puri opined moderate limitations to lifting weights . . . suggesting [plaintiff] should avoid heavier types of lifting." (T. 19, 587). As defendant points out, courts in this district have consistently found that moderate exertional limitations are consistent with an ability to perform the full range of light work. *See Thola J.W. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1068 (GLS), 2021 WL 981589, at *2 (N.D.N.Y. Mar. 16, 2021) (finding RFC for a full range of light work was consistent with moderate limitations in lifting, carrying, pushing, and pulling); *Raymonda C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0178 (GTS), 2020 WL 42814, at *4 (N.D.N.Y. Jan. 3, 2020) ("[C]ourts have consistently found that a 'moderate' limitation in [standing, walking, lifting, and carrying] is essentially equivalent to an ability to perform light work." (collecting cases)); *Amanda L. v. Saul*, No. 8:18-CV-01221 (NAM), 2019 WL 5865388, at *8 n.3 (N.D.N.Y. Nov. 8, 2019) ("[M]oderate limitations to repetitive lifting, bending, reaching, pushing, pulling, or carrying are not inconsistent with an RFC for a full range of light work.") (internal quotation marks and citation omitted).

Furthermore, the state agency medical consultants both found plaintiff could occasionally lift twenty pounds and frequently lift ten pounds. (T. 84, 100-101). The ALJ found the state agency medical consultants assessments persuasive with additional limitations. (T. 19). The additional limitations did not concern plaintiff's ability to lift.

14

(*Id.*). The ALJ properly relied on the state agency consultants' opinions along with Dr. Puri's opinion to support his RFC finding. When the state agency consultants and Dr. Dassa reached differing conclusions, this created a conflict in the record. "Because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence she has, even when that evidence is internally inconsistent." *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Although "the opinion of a non-examining state agency consultant is ordinarily not a sufficient substitute for the opinion of the claimant's treating provider," *Vecchitto v. Saul*, No. 3:19-CV-726, 2020 WL 4696791, at *6 (D. Conn. Aug. 13, 2020), courts have repeatedly held that "an ALJ is entitled to rely upon the opinions of both examining and non-examining State Agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Christina K. v. Comm'r of Soc. Sec.*, No. 20-CV-1244, 2022 WL 409576, at *4 (W.D.N.Y. Feb. 10, 2022) (emphasis added). In this case, the ALJ's written decision "makes it clear that he considered [state agency consultants] opinions as just one part of a larger analysis of plaintiff's treatment." *Johnathan M. v. Comm'r of Soc. Sec.*, No. 3:21-CV-1076, 2022 WL 18831465, at *6 (N.D.N.Y. Nov. 9, 2022). For example, the ALJ did not discount Dr. Dassa findings wholly on the basis of these opinions, but looked to his consistency with the record as a whole and the degree of support provided for his opinion. Moreover, as discussed above the ALJ also relied on Dr. Puri's opinion

15

regarding plaintiff's ability to lift.  Accordingly, the court finds substantial evidence supports the ALJ's RFC and affirms the Commissioner's decision.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. Nos. 7, 11) be **DENIED;** and it is further

**RECOMMENDED,** that defendant's motion for judgment on the pleadings (Dkt. No. 10) be **GRANTED**; and it is further

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 23, 2023

*[signature: Andrew T. Baxter]*
Andrew T. Baxter
U.S. Magistrate Judge